AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | | |
|---|---|---|---|
| v. | ) | | |
| | ) | Case No. | 1:20MJ103 |
| KARIM ALI RASHID, a/k/a KAREEM RASHID | ) | | |
| | ) | | |
| *Defendant(s)* | ) | | |

**CRIMINAL COMPLAINT**

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  February 4, 2020  in the county of  Butler  in the Southern District of  Ohio , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g) | Possession of firearm and ammunition by prohibited person |

This criminal complaint is based on these facts:

See Affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Caleb Yokley, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  **Feb 5, 2020**

_____
*Judge's signature*

City and state:  Cincinnati, Ohio     Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# A CRIMINAL COMPLAINT

I, Caleb Yokley, a Special Agent with the Federal Bureau of Investigation, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am submitting this affidavit in support of an applications for a criminal complaint against defendant KARIM ALI RASHID, a/k/a KAREEM RASHID ("RASHID") for violations of 18 U.S.C. §922(g) (possession of firearm or ammunition by a prohibited person) in the Southern District of Ohio.

2. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since 2019. I am assigned to the Cincinnati Division's Joint Terrorism Task Force. In this capacity, I am responsible for investigating violations of Title 18 of the United States Code and other violations of federal law. I have conducted and participated in investigations that involved the use of advanced investigative techniques such as: execution of search warrants on computers, emails, other electronic devices and physical structures; physical and electronic surveillance, and vehicles. During my investigations, I have participated in witness interviews, subject interviews, and analysis of evidentiary items. I have received specialized training in interviewing and interrogation techniques, search and seizure, and other investigative techniques.

3. Prior to joining the FBI, I was an Assistant District Attorney (ADA) for the Knox County District Attorney's Office. As an ADA, I was primarily responsible for prosecuting criminal cases involving domestic violence, firearms offenses, as well as other misdemeanor and felony violations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 19 U.S.C. § 922(g) have been committed and are being committed by KARIM ALI RASHID, a/k/a KAREEM RASHID ("RASHID") within the Southern District of Ohio.

## PROBABLE CAUSE

6. The United States, including the FBI, is conducting a criminal investigation of RASHID regarding possible violations of 18 U.S.C. § 922(g).

7. According to NCIC information, RASHID is a convicted felon. RASHID was arrested in 1998 and convicted on Felony Drug Trafficking charges with a gun specification, receiving a 3-year sentence.

8. The FBI interviewed an individual who was the landlord for property where RASHID previously lived in 2019. The landlord conducted a Section 8 inspection at the property in Cincinnati, OH, during the Spring 2019. At that time, the landlord observed several firearms behind a bookshelf in the corner of a second story room. The landlord witnessed a MPAP 92 AK-47 rifle with approximately a 30-round magazine, a rifle believed to be an AR-15, and a Glock 22 (40 caliber) handgun. The landlord spoke with RASHID, and RASHID's statements led the landlord to believe the guns belonged to RASHID. When RASHID moved out of the property, two pairs of handcuffs were left on the basement steps. The landlord recovered the handcuffs.

9. On October 18, 2019, the Affiant met with a Confidential Informant (the "CI") with direct access and high reliability. The Confidential Informant provided the following information regarding the subject, RASHID:

a. RASHID owns an incense company named Our Heavenly Scents and sells packaged incense to businesses in the Cincinnati area. As of October 2019, RASHID rented storage units 1451 and 1452 at iStorage on 2201 Mollering Ave., Cincinnati, OH 45214. These storage units were used by RASHID for mixing chemicals and packaging incense.

b. RASHID is the step-father of a 15-year-old male (hereinafter the "STEPSON"). According to the CI, RASHID has been violently abusing the STEPSON for approximately four years. During that time, RASHID has forced the STEPSON to work in the storage units and package incense, without adequate food or water.

c. The STEPSON often escapes from the storage container and runs away. In the month leading up to October 2019, the CI has found the STEPSON sleeping inside the CI's vehicle, and has also found STEPSON hiding in a recycling bin on the street. Sometime around September, 2019, STEPSON escaped the storage unit and traveled to the CI's home. STEPSON proceeded to detail the full extent of RASHID's abuse to the CI.

d. The CI reported that RASHID has punched, kicked, and bit STEPSON on multiple occasions. STEPSON reported being kicked down the steps on multiple occasions, and handcuffed in the garage at night so he is unable to move about the house. The CI witnessed STEPSON with severe bruising and swelling of the face on multiple occasions.

  e. On one occasion, the CI was at RASHID's house and witnessed RASHID place a handgun in STEPSON's mouth because STEPSON forgot to close the backdoor.

  f. In addition, the CI has witnessed RASHID with a firearm on multiple occasions. Specifically, RASHID has threatened the CI with a handgun, and RASHID drove by the CI's home with an assault rifle sitting in the passenger seat of the vehicle.

  g. According to the CI, RASHID is believed to keep a black Glock firearm in his vehicle or on his person.

10. On October 18, 2019, the FBI and others conducted a welfare check at iStorage on 2201 Mollering Ave. The manager of iStorage recognized RASHID's name and stated that he had noticed a strong "cologne like" smell coming out of RASHID's unit. Upon investigation, the iStorage manager found STEPSON inside the unit. The manager reprimanded RASHID and informed him individuals are not allowed to work or live in the storage units.

11. During the welfare check RASHID arrived at the storage unit with STEPSON riding in the passenger seat of his vehicle. RASHID was not willing to have a conversation with Agents and told STEPSON, "do not talk to them, do not answer any of their questions." RASHID and STEPSON unloaded brown boxes from his vehicle before leaving the storage unit.

12. The CI spoke to RASHID on the phone several times after RASHID left the storage unit on October 18, 2019. RASHID told the CI, "I know someone snitched on me, I will take [STEPSON] out of town where no one will find him." The CI added RASHID was yelling at STEPSON calling him a traitor, and telling STEPSON to put something in a black bag. The CI believes RASHID was referring to a handgun.

13. Law enforcement investigated the location of RASHID and the STEPSON. Based on the law enforcement investigation, it was determined that RASHID spent many days at a property in Forest Park, namely 772 Evangeline Rd, Cincinnati, Ohio 45240. In addition, law enforcement investigation determined that RASHID was residing at and spending his nights at 58 Windsor Dr., Hamilton, Ohio 45013. Law enforcement has visually confirmed RASHID coming and going from the Windsor Drive location. Cell site and GPS data from RASHID's cell phone further confirm RASHID's consistent travel to and from both locations.

14. **The February 4, 2020 Interview of the STEPSON.** On February 4, 2020, a traffic stop was initiated on RASHID by the Forest Park Police Department. RASHID was driving and the STEPSON was a passenger in the vehicle. Hamilton County's Child Protective Services removed the STEPSON from RASHID's custody. The STEPSON was then interviewed by law enforcement.

15. During the interview, the STEPSON confirmed the above-referenced reporting by the CI about RASHID previously forcing the STEPSON to work and sleep in the storage unit. The STEPSON reported that RASHID kept the STEPSON handcuffed to a table at the Windsor Drive residence at night.

16. Regarding firearms, the STEPSON denied that RASHID ever placed a gun in the STEPSON's mouth. However, the STEPSON stated that RASHID was regularly in possession of firearms. RASHID often carried guns in a blue bag with a drawstring at the premises as well as when traveling. STEPSON reported that there was a gun safe kept at the Windsore Drive residence, which contained guns. STEPSON also reported that RASHID trained the STEPSON and RASHID's other children in how to handle firearms. STEPSON reported that he has seen RASHID with a firearm as recently as in the prior two weeks.

17.  **Hamilton County Jobs and Family Services Removal of Remaining Siblings.**
On February 4, 2020, Special Agents and Hamilton Police Department assisted Jobs and Family Services (JFS) in accessing the Windsor Drive residence and removing the remaining children from the home pursuant to a Court Order signed by a Magistrate Judge.  Upon arrival, the MOTHER refused to open the door, despite being shown the court order authorizing entry.  Eventually, MOTHER allowed Agents and Officers into the home.  Upon entry, children could be heard downstairs crying and MOTHER was initially uncooperative in gathering the children.  Based on STEPSON's information regarding family members being trained in the use of guns toward intruders, Agents and Officers accompanied the children and MOTHER throughout the home while JFS arranged for removal of the children.

18.  Upon entry of a downstairs living area, Agents noticed, in plain view, a fireplace with a removable heater placed partially in front of the opening.  There was a large gap on the right-hand side of the fireplace.  In the space, Agents were able to clearly see a gun box and two assault style rifles stacked against the fireplace walls.  At that point, children were asked to leave the area and the weapons were secured and removed by the Agents and Officers on scene.

19.  Agents recovered the following firearms and ammunition from the fireplace location at the Windsor Drive residence on February 4, 2020:

   a.  Armscor revolver (RIA1641977) with six bullets;

   b.  Taurus .357 Magnum (2J83527) with five bullets;

   c.  An assault style rifle (M92PV008723) with 39 bullets and one magazine; and

   d.  DPMS, Inc. rifle .556 (25960) with 74 bullets and 3 magazines.

20.     RASHID was taken into custody by law enforcement the evening of February 4, 2020 upon a probable cause arrest.

## CONCLUSION

21.     Based on the information above, I respectfully submit that there is probable cause to believe that KARIM ALI RASHID, a/k/a KAREEM RASHID has violated 18 U.S.C. § 922(g) in the Southern District of Ohio and elsewhere. I respectfully request that the Court authorize the complaint.

Respectfully submitted,

CALEB YOKLEY, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February ___5___, 2020

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE