**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:20-CR-019 |
| Plaintiff, | : | JUDGE McFARLAND |
| v. | : | **MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE ON BOND** |
| KARIM ALI RASHID, | : | |
| Defendant. | : | |

After a hearing and argument on February 7, 2020, Magistrate Judge Litkovitz entered an order of detention for Defendant Karim Rashid. (R. 11, Detention Order.) Specifically, the court found that Defendant Rashid posed a risk of harm to others and the public, as discussed below. Defendant Karim Rashid has now filed a motion for release on bond. (R. 18.) The government submits this memorandum in order to fully explain the factual circumstances that support continued detention.

**A. The Coronavirus Crisis Alone Does Not Justify Bond.**

In making the request for bond, the defense refers to the current State of Emergency declared in Ohio related to the coronavirus pandemic. Chief Judge Marbley has addressed the implications of the virus in several General Orders, as well as in a March 27, 2020 Amended Order denying a detention hearing. *United States v. Venham*, S.D. Ohio, Case No. 2:19-cr-00234 (C.J. Marbley), R. 20, PAGEID43-47.[1] In the *Venham* Order, Chief Judge Marbley wrote that, as concerning as the pandemic is, detention issues must be evaluated in the first instance through

---

[1] Unlike the defendant in *Venham*, Defendant Rashid does not claim to have any specific health issues that might weigh in favor of release.

the individualized assessment of the factors set forth in 18 U.S.C. Sec. 3142(g), namely: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*. at PAGEID 46. Accordingly, the Court's analysis should focus on those statutory factors.

### B. The Felon in Possession Charges.

As noted above, the Court should consider the nature of the charges, as well as the strength of the evidence against the defendant for the charges. 18 U.S.C. Secs. 3142(g)(1-2). Here, Defendant Rashid is a convicted felon charged with possession of firearms and ammunition as a prohibited person, in violation of 18 U.S.C. Sec. 922(g). Rashid was previously arrested in 1998 and convicted on Felony Drug Trafficking charges with a gun specification, receiving a 3-year sentence.

The Section 922(g) charges in the Indictment pertain to firearms and ammunition recovered at two different locations controlled by Defendant Rashid. First, law enforcement recovered the following at Rashid's Windsor Drive residence on February 4, 2020:

    a. Armscor revolver (RIA1641977) with six bullets;

    b. Taurus .357 Magnum (2J83527) with five bullets;

    c. An assault style rifle (M92PV008723) with 39 bullets and one magazine;

    d. DPMS, Inc. rifle .556 (25960) with 74 bullets and 3 magazines; and

    e. 82 cartridge casings of ammunition marked "Federal, .38 Special".

Second, law enforcement recovered the following firearms and ammunition from Rashid's property in Forest Park on February 5, 2020:

      a. Western Six .22 caliber revolver (s/n K47344) and 5 rounds of .22 ammunition; and

      b. ARCOA .22 caliber short revolver (no visible serial number) and 5 rounds of .22 ammunition.

As explained below, an additional firearm was recovered from the search of a Dodge Durango registered to Karim Rashid.

Finally, as explained in the Complaint, there are at least three different individuals who have identified Rashid as possessing such firearms. Accordingly, the strength of the evidence against the defendant for the underlying charges weighs heavily in favor of detention. 18 U.S.C. Sec. 3142(g)(2).

### C. Conduct Regarding the Dodge Durango.

While incarcerated, Rashid has obstructed justice by attempting to hide or destroy evidence of an additional firearm in his possession. After the February 4, 2020 arrest of Rashid, law enforcement identified a storage unit rented by Rashid, as well as two vehicles registered to Rashid that were parked outside of the storage facility. One of those vehicles was a Dodge Durango registered to Karim Rashid.

After his arrest, Rashid made numerous jail calls to an associate. During those calls, Rashid repeatedly asked the associate to find and get rid of the Dodge Durango. Case No. 20-MJ-199. On February 24, 2020, law enforcement obtained and executed a search warrant on the Dodge Durango. Law enforcement recovered the following from Rashid's Dodge Durango:

      a. Gray lockbox;

      b. Glock 17 Gen 4 9x19 pistol (SN: YTY 622);

      c. PMAG 17 GL9 Pistol magazine containing 17 rounds of 9mm Luger

        round nose pistol cartridges;

d. PMAG 17 GL9 Pistol magazine containing 16 rounds of 9mm Luger hollow point pistol cartridges;

e. PMAG 17 GL9 Pistol magazine containing 6 rounds of 9mm Luger hollow point and 11 rounds of round nose pistol cartridges; and

f. PMAG 17 GL9 Pistol magazine containing 17 rounds of 9mm Luger round nose pistol cartridges.

This episode illustrates Rashid's extensive access to weapons, the strength of the evidence against him, and Rashid's efforts to conduct additional criminal activity while incarcerated.

**D. The Potential Harm to Others and the Public.**

    **1. The Harm Towards Rashid's Children.**

As set forth in the affidavit supporting the Complaint, there were serious allegations pertaining to Defendant Rashid's treatment of his stepson. The Defendant owns an incense company named Our Heavenly Scents and sells packaged incense to businesses in the Cincinnati area. Rashid rented storage units 1451 and 1452 at iStorage on 2201 Mollering Ave., Cincinnati, Ohio. These storage units were used by Rashid in part for mixing chemicals and packaging incense. (Complaint, par. 9.)

According to a confidential informant, Rashid violently abused his 15-year-old stepson for approximately four years. The Complaint sets forth the details of the reported abuse, which included forcing the stepson to work and stay in the storage units and package incense, without adequate food or water. (Complaint, par. 9.) The reported abuse also alleged that Rashid handcuffed the stepson in the garage at night. *Id.*

On October 18, 2019, the FBI and others conducted a welfare check at iStorage on 2201 Mollering Ave. (Complaint, pars. 10-11.)   The iStorage manager once found the stepson inside the unit and informed Rashid that individuals are not allowed to work or live in the storage units. During the welfare check, Rashid arrived at the storage unit with the stepson riding in the passenger seat of his vehicle.   Rashid was not willing to have a conversation with agents and told the stepson, "do not talk to them, do not answer any of their questions." *Id.*

The Complaint further summarizes statements made by the stepson to law enforcement and child protective services on February 4, 2020. (Complaint, pars. 14-16.)   On that day, a traffic stop was initiated on Rashid by the Forest Park Police Department when the stepson was a passenger in the vehicle.   Hamilton County's Child Protective Services removed the stepson from Rashid's custody and interviewed him. *Id.* The stepson confirmed that Rashid had forced him to work and sleep in the storage unit. *Id.*   The stepson also stated that Rashid kept the stepson handcuffed to a table at the Windsor Drive residence at night. *Id.*

The stepson reported that Rashid was regularly in possession of firearms, including at the Windsor Drive residence. *Id.*   The stepson also explained that Rashid trained the stepson and Rashid's other children in how to handle firearms. *Id.*   The children all lived at the Windsor Drive address, and the firearms and ammunition were readily accessible to the children.   The firearms were stored without any gun safe or lock, at floor level, easily accessible to very young children in the house.

Thus, there is substantial evidence showing Rashid's danger towards others in the community, particularly his own family.   The Defendant's demonstrated access to firearms demonstrates his dangerousness, not only to his family, but to the community at large as well as the unlikelihood that he would abide by the conditions of release imposed by the Court.

5

**2. Conduct Towards Witnesses.**

There are numerous instances suggesting that Rashid may act in a harassing, threatening, or intimidating manner towards witnesses in this case, particularly the informant and the stepson.

As explained in the Complaint, the informant saw Rashid with a firearm on multiple occasions. In one instance, Rashid threatened the confidential informant with a handgun, and Rashid drove by the informant's home with an assault rifle sitting in the passenger seat of the vehicle. The Complaint further details statements made by Rashid after the October 18, 2019 welfare check at the storage unit regarding "snitches." (Complaint, par. 12.) In the jail calls, Rashid blames his arrest on his stepson and states that the stepson is setting him up.

There is also reason to believe that the defendant knows (or at least has guessed) the identity of the informant. Rashid stated on several calls that he believes he knows the identity of the informant. Rashid referenced initials for the name of the person he believes is the information. He also mentions the intersection where he believes the informant lives. Rashid stated on one call that he would have everyone come to the trial to see who the informant was.

Moreover, since the time of Rashid's arrest, an associate of Rashid's has approached the informant and stated a belief that he is the informant for the case and encouraged the informant to stay away from Rashid's church and community. Given all of this information, the government has concerns about what actions Rashid may take towards witnesses in this trial.

**E. Conclusion.**

For the foregoing reasons, the government requests that the motion for release on bond be denied.

    Respectfully submitted,

    DAVID M. DEVILLERS
    United States Attorney


    *s/Timothy S. Mangan*
    TIMOTHY S. MANGAN
    ANTHONY SPRINGER
    Assistant United States Attorneys
    221 East Fourth Street, Suite 400
    Cincinnati, Ohio 45202
    Office: (513) 684-3711
    Fax: (513) 684-6385
    E-mail: Timothy.Mangan@usdoj.gov


CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this ___ day of April, 2020, electronically on all Counsel of record.

    *s/Timothy S. Mangan*
    TIMOTHY S. MANGAN (069287
    Assistant United States Attorney